# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CATHLEEN MICHELLE KOLSCH,

    Petitioner,

vs.

BERNARD CURTIS, et al.,

    Respondents.

Case No. 3:09-CV-00515-LRH-(WGC)

**ORDER**

    Before the court are the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#1), respondents' answer (#9), and petitioner's traverse (#11). The court finds that relief is not warranted, and the court denies the petition.

    Petitioner worked for Elko County's ambulance service. Part of her duties included receiving payments from people who used the ambulance service, posting those payments into a bookkeeping application on her office computer, and depositing the payments with the county treasurer. If petitioner was not in the office, then other employees would receive payments and place them on petitioner's desk for posting. On or around August 23, 2004, a customer complained that a cash payment that he had made was not reflected on the record of his account. An investigation over the next couple of days revealed three cash payments, totaling $470, to the ambulance service that petitioner had not posted into the bookkeeping application or deposited with the treasurer. Petitioner was on leave at the time, but she came into the office when a co-worker informed her that her supervisor was examining her desk. Petitioner told her supervisor and the county's director for human resources that she had taken the money for her personal use, to pay for

moving her daughter to college, and that she intended to replace the money. She then took five $100 bills from her purse and gave them to her supervisor.

Subsequent investigation revealed similar problems, and thirty-six transactions were at issue in petitioner's case. At least twice, people paid cash to the ambulance fund, but the bookkeeping application showed that the amounts were written off, and the money never was recovered. On several occasions, petitioner would take money that had been paid to the ambulance service and replace the money with a personal check, drawn upon her own account, that she deposited with the county treasurer. One check for $250 had not been deposited when the investigation occurred, even though petitioner had written it several weeks earlier, and petitioner was reprimanded for that. At trial petitioner testified that she would take money, write herself an IOU on a sticky note, and then later replace the money.

The trial showed that controls were lax at the county's administrative office. Petitioner was not alone in her practices. Her testimony, and the testimony of other witnesses, showed that employees in the administration office often would take money and write personal checks to cover the amount. The county treasurer allowed this practice until the events at issue in this case. Another employee, Deanne Conroy, had been using the office's credit card machine to give herself "refunds" on her debit card from the state district court's collections account, effectively transferring money into her checking account. She was convicted for her actions. Petitioner testified that her office was unlocked, that her computer always was on, and that the bookkeeping application was not password-protected.

Petitioner was charged with one count of theft, a violation of Nev. Rev. Stat. § 205.0832. Ex. 3 (#10). Theft "constitutes a single offense embracing the separate offenses commonly known as larceny, receiving or possessing stolen property, embezzlement, obtaining property by false pretenses, issuing a check without sufficient money or credit, and other similar offenses." Nev. Rev. Stat. § 205.0833(1). The jury found petitioner guilty of attempted theft. Ex. 23 (#10). Petitioner appealed. The Nevada Supreme Court affirmed and denied rehearing. Ex. 36, 38 (#10).

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

In ground 1, petitioner claims that the evidence was insufficient to uphold the verdict of attempted theft. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of their testimony, as tending, in a greater or less degree, to prove the facts relied on." Ewing's Lessee v. Burnet, 36 U.S. (11 Pet.) 41, 50-51 (1837).

On this issue, the Nevada Supreme Court held:

> Here, Kolsch was convicted of attempted theft under NRS 193.330 and NRS 205.0832. Pursuant to those statutes, the State was required to prove that Kolsch intended, but failed, to accomplish control of "any property of [the County] with the intent to deprive [the County] of the property." NRS 205.0832(1)(a); see NRS 193.330. We determine that the State met this burden.
>
> When Kolsch was out of the office on vacation, one of her supervisors discovered that nearly $500 was missing from the ambulance account. Kolsch testified that when she was on vacation, she received a phone call from her co-employee notifying Kolsch that supervisors were searching through her desk. Upon Kolsch's return, her supervisors questioned her about the missing money. Kolsch admitted to taking the money, stating that she needed it for a trip. She then handed her supervisors $500. Kolsch's supervisor testified that Kolsch was not authorized to take any money from the account.
>
> Based on this evidence, we determine that the State demonstrated that Kolsch, by taking the County's money for her personal benefit, intended to control a portion of the County's funds, and to deprive the County of the money, but that she failed to deprive the County of the money because her supervisors discovered that the funds were missing, which forced Kolsch to return $500 to her supervisors. Because Kolsch had control of the money before she left for her vacation, the jury was entitled to believe that Kolsch intended to commit the theft, but that she failed to accomplish the crime because Kolsch's supervisors discovered that the money was missing. Moreover, while this court has stated that juries may not be instructed on the issue, this court has stated that "'a jury is entitled to extend lenity and convict of the lesser offense'" and has upheld convictions based on such. Cf. Fiegehen v. State, 121 Nev. 293, 301, 113 P.3d 305, 310 (2005) (quoting Graham v. State, 116 Nev. 23, 31 n.8, 992 P.2d 255, 260 n.8 (2000)) (where this court upheld a conviction of a lesser offense when the evidence supported both first- and second-degree murder). As a result, there was sufficient evidence to support Kolsch's attempted theft conviction.

Ex. 36, pp. 2-3 (citations and footnotes omitted) (#10).

The Nevada Supreme Court's focus on the $470 that started this case, to the exclusion of all the other transactions, was a reasonable decision. First, that money alone exceeded the floor of $250 to make the offense a category C felony. See Nev. Rev. Stat. § 205.0835(3).[1] Second, petitioner was indisputably tied to the $470, because she admitted taking the money. Given the lax procedures and controls in the office, other people might have been involved with the other transactions.

The Nevada Supreme Court also was reasonable in its decision that the jury was entitled to believe that petitioner intended to steal the money. Petitioner testified that she would write checks to cover for cash that she removed from the ambulance fund's receipts, but she did not do the same for the $470. She testified, "There probably was a sticky note in [the file]." Ex. 19, pp. 174-75 (#10). In contrast, she did write a check for $250 that she had taken out earlier, but she had not yet deposited the check. Id., p. 175 (#10). The jury could believe that this deviation from petitioner's standard practice showed an intent to steal the money. Also, the jury might not have believed petitioner's testimony that she wrote herself IOUs; unlike the checks that she wrote, other than her own testimony, there was no evidence of the IOUs. Furthermore, when caught petitioner did not return $470 to her supervisor. She gave him five $100 bills. The jury could believe that petitioner had taken and used the money, and then later obtained $500 to give to her supervisor. Theft, to the extent that it includes larceny and embezzlement, is complete when the property at issue is taken. Rose v. State, 471 P.2d 262, 264 (Nev. 1970) (embezzlement); State v. Sheeley, 162 P.2d 96, 99 (Nev. 1945) (larceny). Therefore, the Nevada Supreme Court reasonably could have concluded that the verdict was sufficient to support a verdict of guilt for theft.

Even though the evidence was sufficient to support a conviction of theft, the verdict and conviction for attempted theft presents no constitutional problem. No decision of the Supreme Court of the United States clearly establishes that a verdict of attempt is unconstitutional if the evidence supports a verdict that the defendant completed the crime. As the United States Court of

---

[1] In 2011, an amendment changed the floor to $650. 2011 Nev. Stat., c. 41, § 10.

Appeals for the Ninth Circuit notes, if there was a constitutional problem, then many plea bargains would be unenforceable:

> The fact that the acts he committed could have supported a conviction for the greater crime of a completed kidnapping does not entitle Defendant to an acquittal on either the conspiracy or the attempt conviction. Rule 31 of the Federal Rules of Criminal Procedure sets forth that "[a] defendant may be found guilty of . . . (1) an offense necessarily included in the offense charged; (2) an attempt to commit the offense charged; or (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right." Fed. R. Crim. P. 31(c). This "rule codified pre-existing law." Keeble v. United States, 412 U.S. 205, 208 n. 6, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973). Indeed, if Defendant's contention, that one cannot be convicted of a lesser included offense if he actually committed the greater offense, were true, then most plea agreements would be unenforceable. Defendant has pointed to no constitutional or statutory provision that would yield that result.

United States v. Iribe, 564 F.3d 1155, 1161 (9th Cir. 2009) (emphasis added). The Supreme Court of the United States has noted that a verdict may be inconsistent because the jury has decided to be lenient. United States v. Powell, 469 U.S. 57, 65 (1984) (citing Dunn v. United States, 284 U.S. 390 (1932). Therefore, the Nevada Supreme Court's holding that the jury might have decided to be lenient was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

Petitioner bases her argument upon misinterpretations of two decisions of the Nevada Supreme Court. First, she argues that Crawford v. State, 811 P.2d 67 (Nev. 1991), holds that attempt cannot be a lesser-included offense of a completed crime, because an element of attempt is failure to complete the crime. Petitioner's argument does not take into account what the Nevada Supreme Court then held:

> It is generally held that attempt offenses consist of three elements: (1) the intent to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission. See, 22 C.J.S. Criminal Law § 116 (1989) citing cases and LaFave & Scott Substantive Criminal Law Vol. 2, § 6.2. In Nevada, the statutory definition of an attempt crime is "[a]n act done with intent to commit a crime, and tending but failing to accomplish it." NRS 193.330. Because an element of the crime of attempt is the failure to accomplish it, an attempt crime may not be a lesser included offense of the completed crime. In Nevada, however, the State may charge a defendant with the completed crime and nevertheless obtain a conviction for attempt as provided by NRS 175.501. This is a just principle despite the absence of the third element of the discrete crime of attempt (failure to consummate), because in a generic sense, every consummated crime is necessarily preceded by an attempt to commit the crime.

Crawford v. State, 811 P.2d 67, 71 (Nev. 1991) (emphasis added). Nev. Rev. Stat. § 175.501, similar to Rule 31 of the Federal Rules of Civil Procedure, provides:

> The defendant may be found guilty or guilty but mentally ill of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

To the extent that Crawford allows a claim that is addressable in federal habeas corpus, Crawford explicitly permits what happened in petitioner's case, and thus does not render her conviction infirm.

   Second, petitioner argues that the Nevada Supreme Court has "already rejected a theory of upholding evidence as sufficient when it is sufficient as to a higher degree of crime 'tempered by a desire for leniency.'" Petition, p. 13 (#1) (quoting Labastida v. State, 986 P.2d 443 (Nev. 1999) ("Labastida II")). Petitioner appears to be raising an issue solely of state law, because, as noted above, federal law does not prohibit a verdict of attempt when the evidence is sufficient to support a verdict of the completed crime, nor does federal law prohibit leniency by the jury. Additionally, if Labastida II actually held what petitioner argues it held, then the Nevada Supreme Court receded from the holding within a year, because when it affirmed petitioner's judgment of conviction it cited two post-Labastida II decisions that allowed jury leniency. See Ex. 36, p. 3 (#10). However, reading Labastida II shows that petitioner has misinterpreted the Nevada Supreme Court's decision. A jury found Labastida guilty of child neglect and second-degree murder of her seven-week-old son. Initially, the Nevada Supreme Court affirmed the judgment of conviction. Labastida v. State, 931 P.2d 1334 (Nev. 1996) ("Labastida I"). The court held:

> First, the jury could have found Labastida guilty of child abuse and first-degree murder based upon the grounds that (1) she aided and abetted Strawser [the father] in the unlawful killing by observing or being manifestly aware that Strawser was willfully causing the infant to suffer dangerously severe and unjustifiable injury and pain as a result of abuse, and (2) by doing nothing to stop this abuse when she was responsible for the child and it was clearly possible for her to have taken preventive measures. . . . <u>The jury could then have elected to give Labastida the benefit of leniency based upon a finding that her involvement was much less than that of Strawser.</u>

Id. at 1339 (emphasis added). On rehearing, the court determined that Labastida I was a misapprehension of fact and law. The court noted that the jury was not instructed that it could find Labastida guilty of first-degree murder based upon the theory quoted above. Labastida II, 986 P.2d

-7-

at 445.  The court also noted that the theory quoted above did not state the statutory elements of first-degree murder accurately.  Id. at 446.  The jury actually, and accurately, was instructed on three theories by which they could find Labastida guilty of first-degree murder:

> (1) she directly committed or aided and abetted Strawser in committing a murder perpetrated by means of child abuse; (2) she directly committed or aided and abetted Strawser in committing a murder perpetrated by means of torture; and (3) she directly committed or aided and abetted Strawser in committing a willful, deliberate and premeditated murder.

Id. at 445.  The jury could not have found Labastida guilty of first-degree murder by means of child abuse because the jury acquitted Labastida of child abuse; child neglect, of which the jury did find Labastida guilty, had different elements than child abuse and could not be used to justify a verdict of first-degree murder.  Id. at 446.  The court also determined that evidence was insufficient to find Labastida guilty of first-degree murder by means of torture or by means of a willful, deliberate, and premeditated killing.  Id. at 447.  Regarding its earlier holding that the jury could have been lenient in finding Labastida guilty of second-degree murder, the court held:

> Thus, for these reasons, as well those previously specified in Justice Shearing's concurrence to the original majority opinion, we now abandon the prior opinion's conclusion that the jury's verdict of second degree murder could have been the product of a finding of first degree murder tempered by a desire for leniency.  Rather, from our review of the record it appears that the jury conscientiously followed the instructions and found that, pursuant to those instructions, the evidence before it did not establish beyond a reasonable doubt that Labastida directly committed or aided and abetted Strawser in committing first degree murder.

Id. at 447.  Labastida II did not hold that in Nevada no jury may extend leniency.  Instead, Labastida II held that the jury in that case could not have been lenient in finding Labastida guilty of second-degree murder because that would have required a rational jury to find Labastida guilty of first-degree murder and then decide to be lenient; however, the evidence was insufficient for a rational jury to find Labastida guilty of first-degree murder in the first place.[2]  Juries may be lenient in Nevada, and, as noted above, the Nevada Supreme Court reasonably determined that the evidence was sufficient to support the verdict.

---

[2] The Nevada Supreme Court also determined that Labastida could not have been guilty of second-degree murder either by application of a felony-murder rule or by a finding of implied malice.  Id. at 448-49.  This holding is not germane to the issue present in ground 1.

-8-

To the extent that petitioner claims that double jeopardy bars conviction on attempted theft because the jury acquitted her of theft, the claim is without merit. Contrary to petitioner's argument, in United States v. Gooday, 714 F.2d 80, 82-83 (9th Cir. 1983), the court held that when a jury is instructed on lesser-included offenses as well as the charged offense, and the jury acquits on the charged offense but is unable to reach verdicts on the lesser-included offenses, double jeopardy does not bar retrial on the lesser-included offenses. In petitioner's case, there was no deadlock and retrial; the jury simply found petitioner guilty of the necessarily included offense of attempted theft when the evidence would have supported a verdict of guilty of completed theft. This poses no double-jeopardy problem.

Reasonable jurists would not find the court's conclusion on the sufficiency of the evidence to be debatable or wrong; ultimately, this ground came down to whom the jury believed regarding petitioner's intent. Furthermore, reasonable jurists would not find the court's conclusion to be debatable or wrong regarding the propriety of a verdict for attempt when the evidence was sufficient to support a verdict for the completed crime. The very fact that courts all over the country accept plea bargains for attempted crimes when defendants are charged with completed crimes shows that the Supreme Court of the United States has not clearly established a rule to the contrary. Therefore, the court will not issue a certificate of appealability for ground 1.

Ground 2 involves 36 personal checks that petitioner wanted to introduce into evidence. Petitioner gave the cancelled checks to her attorney. Petitioner's attorney did not disclose these checks to the prosecution in response to a discovery request. At the start of the second day of trial, petitioner attempted to offer the checks into evidence, and the prosecution objected. Petitioner's counsel stated that he had misplaced the checks after petitioner gave them to him. The court decided that the checks would not be allowed into evidence, but that witnesses could testify about petitioner's actions. Petitioner raised the issue on appeal, and the Nevada Supreme Court held:

> Kolsch argues that the district court's decision to exclude 36 checks that Kolsch had written to reimburse the County was error. We disagree.
>
> This court reviews a district court's decision to exclude evidence in a criminal case for abuse of discretion. . . . Thus, "'this court will not overturn [the district court's] decision absent manifest error.'" . . .

> NRS 174.295(1) provides that each party is under a continuing duty to disclose additional material that was previously requested and later discovered. Failure to comply with this duty permits the court to "order the party to permit the discovery or inspection of materials . . . , grant a continuance, or prohibit the party from introducing in evidence the material not disclosed [at trial], or it may enter such other order as it deems just under the circumstances." . . .
>
> In this case, Kolsch presented the State with the 36 checks for the first time at the commencement of the second day of trial. Because Kolsch knew of the checks' existence long before the trial commenced (since they were her personal checks), the district court determined that the checks were known by the defense and could have been subpoenaed. Moreover, Kolsch acknowledges that she was allowed to call witnesses to testify about the practice of short-term loans and pay-backs in the office. Consequently, we conclude that the district court was acting within its discretion when it excluded the checks from admission at trial.

Ex. 36, pp. 4-5 (emphasis added, citations omitted) (#10).

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

Holmes v. South Carolina, 547 U.S. 319, 320 (2006). The Nevada Supreme Court's decision was a reasonable application of Holmes. As that court noted, petitioner's defense was that she borrowed the money and paid it back, so she knew from the start of the proceedings that the checks would play a role in her defense. As the Nevada Supreme Court also noted, witnesses testified about how people would replace cash receipts with their personal checks, so the jury heard the information that petitioner wanted to present with the checks. Furthermore, the prosecution acknowledged that petitioner replaced cash with her personal checks.[3]

Reasonable jurists might debate this court's conclusion, and the court will issue a certificate of appealability for ground 2.

Ground 3 concerns jury instruction 29, which informed the jury that restitution or an offer of restitution is no defense to theft. Ex. 22 (#10). Petitioner does not challenge the propriety of the instruction, but she claims that the trial court, on its own motion, should have instructed the jury that

---

[3]The checks were not entirely to petitioner's benefit. The prosecution argued that by replacing cash with her personal checks, and then not depositing the checks with the treasurer for several weeks or months, petitioner was using the county's funds for her personal purposes. Both Nev. Rev. Stat. § 205.0832(1)(b) and Instruction 13 define this practice as theft. See Ex. 22 (#10).

a good-faith belief in the lawfulness of her acts was a defense to theft.[4]  Petitioner raised this issue on direct appeal, and the Nevada Supreme Court denied it summarily.  Ex. 36, pp. 5-6 n.5 (#10).  Petitioner cites Mathews v. United States, 485 U.S. 58 (1988), in support of her argument.  However, Mathews involved a trial court's denial of a request to instruct the jury about a defense.  Petitioner does not cite, and this court cannot find, a decision of the Supreme Court of the United States that clearly establishes a constitutional duty of a trial court to give an instruction on its own motion on a possible defense.  In the absence of such a decision, the Nevada Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  Carey v. Musladin, 549 U.S. 70, 77 (2006); 28 U.S.C. § 2254(d)(1).

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on this ground.

Ground 4 concerns the admission into evidence of petitioner's timesheets during the prosecution's rebuttal.  Petitioner testified that she was not in the office at the time some of the transactions at issue occurred.  In rebuttal, the prosecution offered petitioner's timesheets, which showed when petitioner was in the office.  Petitioner objected because of a discovery violation.  The trial court admitted them into evidence, agreeing with the prosecution that the timesheets were properly offered for rebuttal.  Ex. 20, pp. 10-12 (#10).  Petitioner raised the issue on direct appeal, and the Nevada Supreme Court denied it summarily.  Ex. 36, pp. 5-6 n.5 (#10).

Petitioner styles ground 4 as prosecutorial misconduct, for not disclosing inculpatory evidence—the timesheets—in advance of the trial.  In support, she cites McKee v. State, 917 P.2d 940 (Nev. 1996), which in turn cites Berger v. United States, 295 U.S. 78, 88 (1934), and Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir. 1983).  The two cited federal cases involve prosecutorial misconduct in closing argument and have nothing to do with admission of rebuttal evidence.

Without any specific guidance from the Supreme Court of the United States, the controlling decision is Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) which holds that rulings on state

---

[4]When the trial court settled the instructions, petitioner's counsel stated that he had no proposed instructions to offer.  Ex. 20, p. 67 (#10)

evidentiary law are not addressable in federal habeas corpus unless they render the proceedings fundamentally unfair. The Nevada Supreme Court did not state why this ground did not warrant reversal. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784. The Nevada Supreme Court reasonably could have concluded that petitioner's presence at the office was not an issue until petitioner testified that at times she was out of the office. Until that time, the prosecution had no reason to research petitioner's timesheets, and the prosecution obtained the timesheets and offered them into evidence at the first opportunity. Under those circumstances, the Nevada Supreme Court reasonably could have concluded that the admission into evidence of the timesheets did not make petitioner's trial fundamentally unfair. 28 U.S.C. § 2254(d)(1).

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability on ground 4.

At the end of grounds 3 and 4, petitioner refers to Chambers v. Mississippi, 410 U.S. 284 (1973), for the proposition that cumulative error can affect her substantial rights. On direct appeal, the Nevada Supreme Court rejected this claim summarily. Ex. 36, pp. 5-6 n.5 (#10). It could have reasonably concluded that, not having found any error, there also was no cumulative error. 28 U.S.C. § 2254(d)(1).

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability regarding cumulative error.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#1) is **DENIED**. The clerk of the court shall enter judgment accordingly.

///
///
///
///
///
///

1    IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the
2 following issue: Whether the Nevada Supreme Court reasonably applied clearly established federal
3 law in its ruling that the trial court did not abuse its discretion in excluding petitioner's checks from
4 evidence (ground 2).
5    DATED this 18th day of April, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE